R-700



# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 3, 1947

Hon. L. A. Woods
State Superintendent of Public Instruction
Department of Education
Austin, Texas

Attn:  Hon. T. M. Trimble     Opinion No. V-363
First Assistant

Re:  Application of Sec. 2 of Art. III, of S. B. 167, 49th Leg., as amended by Acts 1947, 50th Leg., R.S., S. B. 21, where teachers were willing to teach eight months but were allowed to teach but seven.

Dear Sir:

We refer to your letter of recent date wherein you request to be advised concerning the proper application of the Equalization Law, Section 2, of Article III, S. B. 167, Acts 1945, 49th Legislature, as amended by Acts 1947, 50th Legislature, R. S., S. B. 21, to a situation submitted in said letter, in substance, as follows:

Eleven negro teachers in Falls County have qualified under the provisions of the Rural Aid or Equalization Law, S. B. 167, 49th Legislature, for salary aid for a period of eight months. The applications for State aid under this bill submitted by the school districts involved were approved by the Director of Equalization and also by the Joint Legislative Accountant to cover a period of eight months. It has come to our attention that the teachers were allowed to teach only seven months; they would have taught the full eight months, if they had been requested to do so.

By Acts 1947, 50th Legislature, R. S.,
S. B. 21, the salaries of teachers in State
aid schools were raised $75.00 per month for
the last four school months of the school
year 1946-1947. The eleven negro teachers,
teachers in unaccredited schools, received
no part of the $300.00 additional salary
allowance which was approved and granted
them by this Department, and said money is
now on deposit in the county depository.

Question: Are the eleven teachers
entitled to any of the $300.00 additional
salary which was granted for the last four
months of the school term to teachers in
Equalization Aid schools, or should the en-
tire amount of $300.00 per teacher be re-
funded, along with the salaries for the
eighth month which has been sent to the
county?

In response to the written request of this of-
fice for additional information, the County Superintendent
of Falls County wrote as follows:

"In answer to your letter of August
18, concerning the eleven negro teachers
who did not teach for eight months during
the school year of 1946-47, I submit the
following: Some of these teachers brought
their term reports in at the end of the
seventh month without asking anything about
the length of term. I then checked the
files left in this office by the preceding
administration and found that of these
eleven teachers, one had a contract for
six months; four for seven months; three
with no specified length of term on the
contract; and for three, no contract for
the year 1946-47 is on file. All the
teachers who held an eight month contract
taught the full length term. So far as I
know, none of the above teachers were dis-
missed from teaching the last month of the
term; and as to an appeal from any possible
dismissal that I know nothing about, there
has been none made to this office."

Section 2 of Article III, of S. B. 167, supra, as amended, in so far as the same is pertinent to the question submitted herein, provides:

"The base pay for classroom teachers in unaccredited schools shall be One Hundred Thirty-five ($135) Dollars per month for eight (8) months.

". . .

". . . The annual salary of teachers in unaccredited schools shall be the monthly salary multiplied by eight (8).

". . . It is further provided as a temporary method to more adequately compensate teachers . . . in State aid schools for the school year 1946-47, that in addition to the base salary, increment, and allowances authorized in this Section, there shall be paid to teachers . . . teaching in State aid schools, an amount not to exceed Seventy-five ($75) Dollars at the end of each of the last four (4) school months of the school year 1946-1947."

Article 2900, V.C.S., provides in part as follows:

"All available public school funds of this State shall be appropriated in each county for the education alike of white and colored children, and impartial provisions shall be made for both races. . ."

Article 2906, V.C.S., provides in part:

". . . A school month shall consist of not less than twenty school days inclusive of holidays, and shall be taught for not less than seven hours each day, including intermissions and recesses."

Article 2750, V.C.S., provides that school trustees of a district shall make contracts with teachers to teach the public schools of their district, but the compensation to a teacher, under a written contract so made, shall be approved by the county superintendent before the

school is taught, stating that the teacher will teach such school for the time and money specified in the contract. See also Articles 2693, 2781, V.C.S. Said school trustees, under Article 2749, have the power to employ and dismiss teachers, but in case of dismissal, teachers shall have the right of appeal to the county and state superintendent. Moore C.S.D. No. 2 v. Frio County Board, 90 S.W. (2d) 288.

The facts submitted advise that the eleven teachers in question were employed by the proper school authorities, that they did teach for a period of seven school months in the school year 1946-1947, and that they would have taught the eighth or last school month in the school tear if they had been requested to do so. None of the said teachers employed were under a written contract for a period of eight months. The facts submitted further show that one teacher had a contract for six months, four for seven months, three had a contract providing no specific length of term, and as to the remaining three teachers no contract for the school year 1946-1947 can be found. We are informed also that the schools taught by these teachers are unaccredited schools and that the school districts involved made application and qualified for State salary aid under S. B. 167 for a period of eight months in the school year 1946-1947.

It is clear that the unaccredited school districts in question have made application and received State aid under the provisions of S. B. 167 as amended for a period of eight school months, and that the schools in question were operated only for a period of seven months. It is clear also from the facts that the school districts involved have not conformed to the statutes above quoted governing teacher contracts and the employment of teachers by school districts.

Section 2 of Article III, S. B. 167, as amended, fixes the length of term during which an unaccredited school qualifying for State aid shall operate its schools at eight months, provides that the base pay for teachers in unaccredited schools shall be $135.00 per month for eight months, and provides further that the annual salary of teachers in unaccredited schools shall be the monthly salary multiplied by eight.

Article VII of S. B. 167 provides in part:

"Each Deputy State Superintendent shall advise with school officials concerning proper

budgeting of their school fund and assist the
district in making their application for aid,
and each Deputy State Superintendent shall
spend not less than two (2) days in the County
Superintendent's office of each county of his
supervisory districts.  During the second se-
mester of the year the Deputy State Superin-
tendent shall check to ascertain <u>whether the
standards are being maintained and the funds
used as approved. . .</u>"  (Emphasis ours)

Article VI of S. B. 167 provides:

". . . it shall be the duty of the State
Superintendent of Public Instruction to appoint
the number of Deputy State Superintendents here-
inafter authorized to make a thorough investi-
gation, in person, of the teaching staff and
financial condition of each school applying for
aid through the Superintendent's office and the
depository bank; and <u>no aid shall be given un-
less it can be shown that all provisions of this
Act have been complied with</u>, and that such a-
mounts of aid actually needed as shown by the
approved budget and actual expenditures, <u>and
that the funds are being used as approved. . .</u>"
(Emphasis ours.)

Article XIV of S. B. 167 provides further:

"Any district violating any of the provis-
ions of this Act shall forfeit all rights to
such aid and shall be disqualified to receive
any aid of any nature under any Article of this
Act for the current year.  Should any school
district which would otherwise be eligible to
receive aid fail to use the funds for the exact
purpose for which they were allocated in the
approved budget such school district becomes
ineligible for further aid until such offense
is corrected.  The amount of money granted for
each type of aid except tuition shall be set up
as a separate account and shall be made only
for the specified purposes for which such money
was granted. . ."

Thus, under Articles VI, VII, and XIV of the State
Aid Law, it is the duty of the State Superintendent of Pub-
lic Instruction acting through his Deputy State Superintend-
ents to see that all provisions of the Act were being com-

plied with, to ascertain that the districts in question which qualified for State salary aid were maintaining the standards, salary and term schedule set out in the Act, and to determine whether the State aid funds were being used as approved by the Department of Education and the Legislative Accountant. Any districts which may have been reported as violating the provisions of the Act would have become subject to the penalties set out in Article XIV unless and until it had corrected its offense.

By virtue of the provisions of S. B. 167 above quoted, we are of the opinion that the unaccredited schools in question, not having been continued or operated during the last or eighth school month of the school year 1946-1947, were entitled to no State salary aid for the last school month of the said school year. Further, that the State aid funds approved and forwarded by the Department of Education to the proper school authorities in Falls County to cover the eighth school month of the school year 1946-1947 in the unaccredited schools in question, and to cover the additional salaries authorized said eleven teachers under S. B. 21 for the last or eighth school month of said school year should be refunded. Further, that the eleven teachers in question having served during three of the last school months when the school districts were entitled to the additional State salary aid authorized, are each entitled to a payment of $225.00 out of State aid funds forwarded to the county in accordance with the provisions of S. B. 21, 50th Legislature.

## SUMMARY

Where certain school districts in Falls County qualified for school aid under S. B. 167, 49th Leg., and S. B. 21, 50th Leg., for a period of eight school months in the school year 1946-1947, and operated only seven school months of said year, the eleven school teachers in question not having contracts for an eighth month term are entitled to State aid salary payments authorized and approved under S. B. 21 for three of the last four school months of the said school year, but State aid

funds for the last or eighth school month
of said school year should be refunded.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:djm

APPROVED:

*Fagan Dickson*

FIRST ASSISTANT
ATTORNEY GENERAL